UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KIM LANORE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:24-CV-2251-B |
| § | |
| CORPORATION OF THE EPISCOPAL § | |
| DIOCESE OF DALLAS, § | |
| CORPORATION OF THE EPISCOPAL § | |
| DIOCESE OF DALLAS d/b/a THE § | |
| EPISCOPAL DIOCESE OF DALLAS, § | |
| and THE EPISCOPAL DIOCESE OF § | |
| DALLAS, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

Before the Court is a Motion for Summary Judgment (Doc. 24) filed by Defendants Corporation of the Episcopal Diocese of Dallas, Corporation of the Episcopal Diocese of Dallas d/b/a The Episcopal Diocese of Dallas, and the Episcopal Diocese of Dallas (collectively, "Defendants"). For the following reasons, the Court **GRANTS** Defendants' Motion.

## I.

## BACKGROUND

This is a religious discrimination and retaliation case, arising after the Episcopal Diocese of Dallas (the "EDOD") denied Plaintiff Kim LaNore's religious accommodation request to be exempt from an employment position's COVID-19 ("COVID") vaccine requirement. The undisputed facts are as follows.

LaNore, a devout Baptist, began working for the EDOD in 2011 as a receptionist. Doc. 29, Pl.'s App., Ex. 1, at 2. After the EDOD changed office buildings in 2022, EDOD's Bishop George Sumner informed LaNore that her receptionist position was being eliminated because the building administrative tasks she performed were no longer needed at the new building. Doc. 26-2, Defs.' App., Ex. J, 270. At that time, Bishop Sumner invited LaNore to apply for a new position. *Id.* According to the new "Hospitality and Resource" position's description, it involved performing front desk duties, bookkeeping, and some faith-based programming. Doc. 26-1, Defs.' App., Ex. E, 258. Moreover, the position required the applicant to be Christian and COVID vaccinated. *Id.*

LaNore was interested in the position, but she believed that obtaining the COVID vaccine would violate her religious beliefs. Doc. 29, Pl.'s App., Ex. 1, at 2, 5. Accordingly, LaNore requested a religious accommodation to be exempt from the COVID vaccine requirement. *Id.* at 5. LaNore's religious accommodation request was denied soon thereafter, and LaNore did not apply for the Hospitality and Resource position. *Id.* at 6-8. Defendants instead hired an outside candidate for the position. *Id.*

In September 2024, LaNore filed suit against Defendants for religious discrimination and retaliation in violation of Title VII and the Texas Commission on Human Rights Act ("TCHRA"). *See generally* Doc. 1, Compl. LaNore asserts that Defendants discriminated against her on the basis of her religious beliefs when they denied her religious accommodation to be exempt from the COVID vaccine requirement. *Id.* at 7-8. In November 2025, Defendants moved for summary judgment against LaNore's claims. *See generally* Doc. 24, Mot. Summ. J. LaNore filed a Response (Doc. 27), and Defendants filed a reply (Doc. 32). The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks and citation omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine dispute exists as to any issue of material fact. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine dispute exists for trial, the court must view all evidence in the light most favorable to the non-movant. *See Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (other citations omitted). Finally, the evidence that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

## III.

## ANALYSIS

The Court concludes that LaNore's claims fail as a matter of law because Defendants are exempt from religious discrimination and retaliation claims under Title VII and the TCHRA.

Having so concluded, the Court does not address Defendants' alternative argument that LaNore cannot meet her burden of proof at trial.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII also contains an anti-retaliation provision that prohibits an employer from discriminating against an employee because the employee opposed a discriminatory practice. *See* 42 U.S.C. § 2000e–3(a). But, relevant here, Congress created an exemption for religious organizations, which states:

> [t]his subchapter [of Title VII] shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1. In short, the Title VII statutory exemption "exempts religious organizations from Title VII's prohibition of religious discrimination regarding the employment of an individual." *Scaffidi v. New Orleans Mission, Inc.*, 612 F. Supp. 3d 630, 635-36 (E.D. La. 2020). The Supreme Court has understood the statutory exemption to apply to both the secular and religious activities of a religious organization. *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 339 (1987).

Similarly, the TCHRA makes it unlawful for an employer to discriminate against an employee based on their religion or to retaliate against an employee that opposes an unlawful discriminatory practice. *See* Tex. Lab. Code §§ 21.051, 21.055. Also, like Title VII, the TCHRA exempts religious organizations from the general prohibition against religious discrimination. *See* Tex. Lab. Code § 21.109. Relevant here, the TCHRA exemption states:

> (a) A religious corporation, association, society, or educational institution or an educational organization operated, supervised, or controlled in whole or in substantial part by a religious corporation, association, or society does not commit an unlawful employment practice by limiting employment or giving a preference to members of the same religion.
> (b) Subchapter B [ Tex. Lab. Code § 21.051 et seq.] does not apply to the employment of an individual of a particular religion by a religious corporation, association, or society to perform work connected with the performance of religious activities by the corporation, association, or society.

Tex. Lab. Code § 21.109.

According to the Texas Supreme Court, "[t]he [TCHRA] is modeled after" Title VII. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Additionally, one of the TCHRA's stated purposes is to "provide for the execution of the policies of Title VII[.]" Tex. Lab. Code § 21.001(1); *see Horvath v. City of Leander*, 946 F.3d 787, 791 n.3 (5th Cir. 2020) (citing *Rennels*, 994 S.W.2d at 144); *Lacy v. Dall. Cowboys Football Club*, No. 3:11-CV-0300-B, 2012 WL 2795979, at *9 (N.D. Tex. July 10, 2012) (Boyle, J.) ("Like discrimination claims, retaliation claims under Title VII and TCHRA are analyzed under the same standard."). The Court therefore analyzes LaNore's Title VII and TCHRA claims together and refers to the religious organization exemptions collectively as the "statutory exemptions."

A. *Defendants Are Religious Organizations*

Assessing whether the statutory exemptions apply requires (1) determining if Defendants are religious organizations, and (2) determining if their employment decision falls within the exempted categories. The Court addresses both issues below.

The statutory exemptions are limited to religious organizations. 42 U.S.C. § 2000e-1(a); Tex. Lab. Code § 21.109. Because Title VII does not provide a definition for religious organizations, courts look to the nine factors identified by the Third Circuit in the *LeBoon v. Lancaster Jewish*

*Community Center*, 503 F.3d 217 (3d Cir. 2007) case for guidance. *See Garza v. Hou. Methodist Hosp.*, 795 F. Supp. 3d 966, 971 (S.D. Tex. 2025) (citing *Scaffidi*, 612 F. Supp. 3d at 635; *see also Speer v. Presbyterian Child.'s Home & Serv. Agency*, 847 S.W.2d 227, 234 (Tex. 1993) (Gonzalez, J., concurring) (looking to federal law to determine if an entity is a religious organization). The nine factors set out in *LeBoon* are:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 936 n.48 (5th Cir. 2023) (quoting *LeBoon*, 503 F.3d at 226).

Here, LaNore does not contest Defendants' status as religious organizations. *See* Doc. 28, Pl.'s Br., 10. After weighing the relevant factors, the Court finds that Defendants are religious organizations. Defendants are non-profit, religious entities affiliated with the Episcopal Church—a formal Christian church. *See* Doc. 25, Defs.' Br., 12-13 (walking through the *LeBoon* factors). Defendant Corporation of the Episcopal Diocese of Dallas administers the affairs of the EDOD, which consists of "more than 60 churches" and regularly includes religious prayer and worship within these churches. Doc. 26-1, Defs.' App., Ex. C, 3-4.

B.  *LaNore's Claims are Precluded by the Statutory Exemptions*

LaNore argues that, even as religious organizations, Defendants cannot rely on the statutory exemptions to avoid liability because (1) Defendants' employment decision—the denial of her

religious accommodation request—was not based on religious reasons but instead based on fear of COVID transmissions, and (2) Executive Order No. GA-40 ("EO No. 40") suspended the TCHRA religious exception insofar as it permitted Defendants to issue a COVID vaccine mandate. *Id.* at 10, 13-14.

On LaNore's first argument, the reason for a religious employer's action is immaterial when the cause for complaint under Title VII or the TCHRA is religious discrimination. A court in the Southern District of Texas recently addressed and rejected LaNore's first argument. *Garza*, 795 F. Supp. 3d at 976. There, nurses sued their employer-hospital for religious discrimination after it terminated their employment for failing to comply with a COVID vaccine mandate. *Id.* at 969. The nurses asserted that their religious belief against the COVID-vaccine prevented them from complying, and thus the hospital should have granted them a religious accommodation. *Id.* Like LaNore, the nurses argued the statutory exemption did not apply to their claims because the hospital's employment decision was not based upon its religion. *Id.* at 975. The Court rejected that argument because "nowhere in the statute is the limitation that the reason for the employment decision must stem from the *employer's* religion, not the *employee's*." *Id.* at 976. The Court further noted that Congress previously broadened the statutory exemption "to encompass not just those employment decisions motivated by a religious organization's religious activities, but those connected with its activities generally—religious or not." *Id.*

Courts in other circuits have similarly found that Title VII's statutory exemption shields religious organizations from liability against claims of religious discrimination, including claims deriving from vaccine requirements. *See Conway v. Mercy Hosp. St. Louis*, 146 F.4th 704, 710 (8th Cir. 2025) (affirming district court's grant of summary judgment for hospital because Title VII exempted

hospital from religious discrimination claim based on a COVID vaccine mandate); *Burlison v. Mercy Hosp. S.*, No. 4:22-CV-01017-SEP, 2023 WL 4560796, at *1-3 (E.D. Mo. July 17, 2023) (finding therapist's religious discrimination and retaliation claims, stemming from the hospital's rejection of her request to be exempt from the COVID vaccine requirement due to her religious belief, were precluded by the statutory exemption); *Jacobs v. Mercy Health*, 719 F. Supp. 3d 894, 906-907 (E.D. Mo. 2024) (holding "the applicability of Title VII's exemption is not contingent upon . . . a statement by the religious organization that expressly identifies the religious beliefs in contention"); *Wertz v. Mercy Health*, No. 4:23-CV-00579-NCC, 2024 WL 3427218, at *9 (E.D. Mo. July 16, 2024) (holding that hospital was "entitled to summary judgment as a matter of law as exempt from Title VII religious discrimination claims" because it was a "religious entit[y] within the meaning of Title VII's exemption, and the exemption shields [it] from religious discrimination claims, including claims arising from disputes over vaccination requirements"); *Reilly v. Ascension Wis.*, No. 22-CV-1168-BHL, 2024 WL 4527290, at *3-5 (E.D. Wis. Oct. 18, 2024) (granting summary judgment for healthcare organization because it was a religious organization and the workers' claims—stemming from their termination for failing to obtain the COVID vaccine due to their religious beliefs—were covered by the statutory exemption); *Hamil v. Acts Ret.-Life Communities Inc.*, No. CV 22-00366-KD-B, 2025 WL 627227, at *9-10 (S.D. Ala. Feb. 26, 2025) (granting summary judgment for religious organization because"[t]he law declares that such an organization is exempt from religious discrimination claims under Title VII").

     The Court agrees with this consistent body of law , which accords with the Supreme Court's suggestion that the Title VII religious exemption protects both secular and religious decisions made by a religious organization from religious discrimination claims. *See Amos*, 483 U.S. at 339

("Congress acted with a legitimate purpose in expanding the [Title VII statutory] exemption to cover all activities of religious employers."). The statutory exemptions do not require Defendants to proffer a religious reason for their employment decision because, as religious entities, Defendants are categorically exempt from claims alleging a failure to accommodate an employee's religious practice.

LaNore's second argument also fails because EO No. 40 had no impact on the TCHRA. In early 2020, the Governor of Texas began issuing COVID related executive orders using the power granted under the Texas Disaster Act. "The Disaster Act provides: 'The Governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster.'" *Abbott v. Harris Cnty.*, 672 S.W.3d 1, 12 (Tex. 2023) (quoting Tex. Gov't Code § 418.016(a)). According to the Texas Supreme Court, "[t]his language places textual limitations on the power it grants to suspend statutes . . . [because] the statutes suspended must be 'regulatory[]' [and] . . . 'prescrib[e] the procedures for conduct of state business.'" *Id.* at 12-13.

Relevant here, on October 11, 2021, Governor Abott issued EO No. 40 that stated in part:

> No entity in Texas can compel receipt of a COVID-19 vaccine by any individual, including an employee or a consumer, who objects to such vaccination for any reason of personal conscience, based on a religious belief, or for medical reasons, including prior recovery from COVID-19. I hereby suspend all relevant statutes to the extent necessary to enforce this prohibition.

The Governor of the State of Texas, Exec. Order GA-40 (issued Oct. 11, 2021). Because the TCHRA is not a regulatory statute, nor does it "prescribe the procedures for conduct of state business," EO No. 40 did not suspend the religious organization exemption within the TCHRA. Thus, the issuance of EO No. 40 does not preclude Defendants from relying on the statutory exemptions.

To conclude, because Defendants are religious organizations, they are immune from liability for religious discrimination claims under Title VII and the TCHRA. LaNore's discrimination and retaliation claims are based on her contention that Defendants discriminated against her based on her religious belief. *See* Doc. 1, Compl., 1. Therefore, the statutory exemptions apply to LaNore's claims, and they fail as a matter of law.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Corporation of the Episcopal Diocese of Dallas, Corporation of the Episcopal Diocese of Dallas d/b/a The Episcopal Diocese of Dallas, and the Episcopal Diocese of Dallas' Motion for Summary Judgment (Doc. 24). A final judgment will follow.

SO ORDERED.

SIGNED: **January 30, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE